UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| CRAIG CUNNINGHAM,<br>Plaintiff,<br><br>v.<br><br>Entertech, Inc., dba Kidcasting, Igor Reiant,<br>Made Simple Ventures, LLC<br><br>Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

FILED
DEC 0 6 2018
Clerk, U.S. District Court
Texas Eastern

4:18cv850

**Plaintiff's Original Complaint**

**Parties**

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. Entertech, Inc is a corporation that owns the website kidcasting.com and can be served via registered agent The Company Corporation, 251 Little Falls Drive, Wilmington, DE 19808

3. Igor Reiant is the sole corporate officer and owner of Entertech, Inc., and can be served at 1203 Escalero Ave., Pacifica, CA 94044

4. Made Simple Ventures, LLC is a Florida corporation that can be served via registered agent Alex Dubinsky 3451 NE 1st Ave., Apt M202, Miami, FL 33137.

5. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

**JURISDICTION AND VENUE**

6. <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over

Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

7. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls or text messages Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents, including the Plaintiff.

8. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of Entertech, Inc at the direction of Igor Reiant through an agreement with Made Simple Ventures, LLC.

9. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

10. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. §**

227

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code 305.053**

24. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

25. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**FACTUAL ALLEGATIONS**

26. Text messages have been considered calls pursuant to multiple court rulings for the

purposes of the TCPA. In this case, the Defendants placed at least 22 unsolicited text messages initiated using an automated telephone dialing system to the Plaintiff's cell phone 615-212-9191.These text messages constituted telemarketing as it induced the Plaintiff to visit the website for Kidcasting.com

27. Mr. Cunningham received multiple calls from a 6 digit short message code 555888 that contained a generic, pre-typed message and were initiated using an automated telephone dialing system. The calls were on behalf of Entertech, Inc at the direction of Igor Reiant through an agreement with Made Simple Ventures, LLC to which the short message code 555888 is assigned. The Text messages were apparently sent by an automated telephone dialing system via a SMS short code licensed to the Defendants Made Simple Ventures, LLC, the text messages were almost entirely scripted in an impersonal manner and sent enmasse.

28. Many of the text messages were identical or nearly identical, such as a text message sent on November 7th 2018 which stated: *"New Matching Casting Calls in TN. Apply before they expire!"* followed by a link to the website for kidcasting and an identical message sent 14 days later on November 21, 2018. Similarly on July 18, 2018, the Plaintiff recieved a message that staed *"Kidcasting: You have 3 new message(s) from casting professionals. Read now."* and the website followed. and on July 26, 2018 the Plaintiff recieved an identical message. Identical messages were recieved on July 10th 2018 and July 2nd 2018 and June 22, 2018. The text messages were clearly generic and impersonal. Most notably, the Plaintiff has no children at all and is not attempting a career in showbusiness. The Defendants never had the Plaintiff's prior express written consent to send him text messages and the Plaintiff is unsure how the

defendants obtained the Plaintiff's cell phone number.

29. The text messages began on September 21, 2017 and continued through November 21, 2018 for a total of 22 text messages.

30. Kidscasting apparently operates as a website designed to lure hopeful parents selling the dream that they will make their children future movie and TV stars via a subscription service. According to the FTC, modeling scams, especially directed at children are frequent and one hallmark is *"You have to pay a fee to them to serve as your agent before they'll do any work on your behalf."* and the FTC states *"Legitimate agencies don't charge you an up-front fee to serve as your agent. They get paid when you get paid."* See https://www.consumer.ftc.gov/articles/0071-look-out-modeling-scams. Similar to the scams described by the FTC, Kidscasting doesn't get paid when the talent gets paid, but rather gets paid up front.

**Entertech, Inc at the direction of Igor Reiant's sent text messages to the Plaintiff according to a contract for texting services with Made Simple Ventures, LLC**

31. Entertech, Inc., knew full well that calls were being blaced calls on their behalf to consumers across the country pitching talent agency services by Made Simple Ventures, LLC at the direction of Igor Reiant. Igor and Made Simple Ventures, LLC entered into a contract for mass text messaging services and Igor has a pattern and practice of spamming consumers across the country and sending messages to consumers who never signed up and have no interest in receiving text messages regarding his services.

32. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

33. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from Igor Reinat and his related entities consumed part of this capacity.

34. No emergency necessitated the calls

35. Each call was sent by an ATDS.

### Entertech, Inc and Igor Reiant's Knowing and Willful Violations of Telemarketing Regulations

36. Mr. Cunningham asked for an internal do-not-call policy, but none was provided

37. Entertech, Inc and Igor Reiant knowingly violated the TCPA by initiating automated calls with pre-recorded messages to the Plaintiff.

38. Entertech, Inc and Igor Reiant never sent Mr. Cunningham any do-not-call policy.

39. Entertech, Inc and Igor Reiant and did not have a written do-not-call policy while it was sending Mr. Cunningham text messages.

40. Entertech, Inc and Igor Reiant did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

41. Entertech, Inc and Igor Reiant calls did not provide Mr. Cunningham with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

### Igor Reiant's Control over Entertech, Inc Including its Illegal Robotexting and Telemarketing

42. At all times relevant to the claims alleged herein, Igor Reiant was the sole corporate officer and executive in charge of Entertech, Inc. Each and every call was placed on behalf of the corporate entites owned by Igor Reiant. Igor Reiant co-mingles funds

and uses these entities as alter egos of each other.

43. Igor Reiant is DR. Entertech's incorporator and corporate officer.

44. Igor Reiant was aware that Entertech, Inc., was sending automated, telemarketing calls en masse to people, including Plaintiff, and had recieved previous complaints about these types of calls

45. As Entertech Inc's senior-most executive, Igor Reiant had the power to stop these spam campaigns.

46. As EnterTech's, senior-most executive, Igor Reiant had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

47. Instead, Igor Reiant allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

**The Plaintiff's cell phone is a residential number**

48. The text messages were to the Plaintiff's cellular phonne 615-212-9191, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not had a landline so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code 305.053**

49. The actions of Igor Reiant and her corporation violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by Igor Reiant and his corporation violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

50. The calls by Igor Reiant violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I. FIRST CLAIM FOR RELIEF
**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**
**(Against All Defendants)**

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants Igor Reiant, Entertech, Inc., and Made Simple Ventures, LLC jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G. An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

*Craig Cunningham*
Plaintiff,                 12/4/2018

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075